The last case for argument today is Jordan v. Lamanna, No. 20-3317. May it please the Court, Vincent Revelisi, I'm representing Amy Lamanna and the State of New York. We're asking the Court to reverse the District Court's grant of the writ of habeas corpus. The first point that I would like to make is that the District Court was wrong to find that the State unreasonably applied Waller and Presley because fair-minded jurists could disagree. And I would ask the Court to look at the recent decision in the Eighth Circuit in Smith v. Titus for reasoning in a very similar factual case to this one. The second thing that I would like to argue is, as this Court presaged in Gibbons v. Savage — I'm sorry, counsel. What was that case you just cited? Is that in your papers or — It is. Is that the Eighth Circuit case? Yes. The Eighth Circuit case, Smith v. Titus, 958 F. 3rd, it's cited in the briefs. The second point would be that Gibbons v. Savage, from this Court, in a decision written by Judge LaValle, said that whether the explanation would be that so trivial an exclusion did not constitute a violation of the Sixth Amendment or that there was a violation but too trivial to justify avoiding the trial, we do not know. This case would also fall into that category, where the same factors that make the application not unreasonable would also make any violation trivial. And those factors can be drawn from the text of Waller, Pressley, and Press Enterprise. For example, suppression hearings, the Waller case. The language from the Waller case as to why suppression hearings are protected by the public trial right is that they are like trials. Witnesses are sworn and testify. Counsel argue their positions. Resolutions of factual matters take place. That, in fact, it may be particularly strong with respect to suppression hearings because of how similar they are to trials. In addition, suppression hearings involve factual witnesses that may testify at trial, allegations of police misconduct. Isn't it also true that suppression hearings can very well decide whether essentially the guilt or innocence of the defendant will ride on that? And there's some question here, I think, as to whether that's true with respect to these proceedings. Well, in these proceedings, there were no witnesses. There was no testimony. There was no evidence. And it was about conduct that was taking place during the defendant's trial, not about her guilt of the trial evidence. So it was different in kind from a suppression hearing where it's the witness that will testify at the trial about the trial facts. This was something that was unrelated to her guilt or what she did at the time of the crime. Well, what is it that we're looking for here? Is it the label for a stage of the trial or is it the features of what happened during this part of the trial? Here, it seems like there were exhibits that were entered into the record. The defendant was present. Those seem to have the hallmarks of parts of the trial, don't they? Well, the defendant was present, but the defendant was not testifying or giving evidence. And the exhibit was just an exhibit to show the court what the district attorney was talking about, but it was not trial evidence. The exhibit was not admitted into evidence against the defendant to prove anything against her at the trial of her charges. It was just an exhibit to say what the prosecutor was talking about when discussing with the court the concerns about publicity. Okay, I hear what you're saying there. I guess if you could take a step back and try to answer the question about what sort of the broader question of what is a stage of a trial? Well, I think that a stage of the trial has to be what happens, not what you call it. So if you took testimony in chambers, that would be a problem even if it wasn't public. But if you just do an adjournment or something that's not testimonial or not protected, it wouldn't matter if you did it in the courtroom privately. It's what you do, not where you do it. Otherwise, there's no substance at all. And the rights that are being protected here are important rights because of the fairness of the trial. The things that Waller says, that Press Enterprise says, for example, jury selection, Press Enterprise. The offenders are being brought to account for their criminal conduct by jurors fairly and openly selected. The ability of jurors impartially to weigh the evidence presented to them. Those are the concerns that the public is supposed to see. Here, we had a proceeding that had nothing to do with the defendant's guilt. This was not a step towards her conviction. This was something about the trial, the disciplinary and ethical obligations of counsel, not to Doesn't that go to the question of whether it's a fair trial or not? And if so, isn't that something that the public has an interest in? Well, to some extent, the public has an interest in everything, but the fair trial here, the issue was not the defendant's guilt or the factual findings against the defendant. This was about whether somebody was trying to taint the jury. So it wasn't- I'm sorry, because of the mask, I didn't get the word. Trying to- Taint the jury. Taint. Yes. I see that my light is on. Do I still have one minute? The flip side to whether Waller was unreasonably applied is whether any violation of Waller would be trivial, and this Court in Gibbons also discussed triviality. The four factors that Gibbons talked about for discussing triviality are very much the same factors, ensuring a fair trial, reminding the prosecutor and judge of their responsibility, encouraging witnesses to come forward, and discouraging perjury. Because in this proceeding, there was no testimony, no evidence, no witnesses, most of those elements have nothing to do with the proceeding at all. There would be a trivial violation, if any violation at all. Would it matter, I mean, it's the question of whether there was a witness or not. How does that affect whether it's trivial or not? Isn't the question what the issue was rather than what was used to prove it? Because the question is factual resolutions, arguments about the guilt of the defendant, as you said before, about a- The issue was not guilt, that's what I'm saying. I'm not sure it matters to me so much whether there was a witness or not a witness. The question is, what were these proceedings about, and were they part of the trial, and were they something that the public has a keen interest in? Was it part of determining guilt or innocence? Right, and of course it wasn't, because it was really about just the conduct of the parties and whether they were behaving properly with respect to the procedure of the trial. And it was not about the defendant's guilt, it was not about finding whether she was guilty of the crimes, so it was nothing like a suppression hearing. This was a two-month trial with 5,000 pages of transcripts, and this was a 15-minute proceeding with 21 pages of transcripts. So it's definitely not a stage of the trial, a phase of the trial, and it wasn't unreasonable for the trial court and the appellate court of New York to find that this was more like a bench conference or a chambers conference, something where it's not about establishing the guilt, it's not about admission of evidence, it's about conduct and behavior of attorneys, it's something tangential, ancillary, much like the judge's decision in Smith v. Titus being discussed after the hearing was public, the decision was discussed privately because the judge didn't want publicity, and that was the Smith v. Titus Eighth Circuit case. This was much more like that than like a suppression hearing where evidence was going to be admitted, where the defendant's guilt was going to be resolved. Well, even, wouldn't it be correct, counsel, even if the part of what happened was the taking of testimony with respect to the guilt or innocence of the defendant? I mean, things happen, things can happen that sometimes accidentally a door, a courtroom door is left locked and no one knows it's locked, and a few minutes pass and the testimony, and then it's discovered that it's locked and it's open. Wouldn't it be the case, or shouldn't it be the case under law, that an occurrence like that, if it's brief enough and sufficiently unimportant in the whole thing, that it is, it does not require vacating the conviction, not on a harmlessness analysis, which would almost always be the case, but on a triviality analysis? Yes. If it lasted for a long time, it would be one thing. If it lasted a short time, it might be a different one. If it's truly trivial, isn't it a sensible rule that we don't overturn a conviction because of something that's trivial? Yes, and I think Gibbons presaged that, just like it presaged Pressley, because I think it was a few months before Pressley that it was basically the same reasoning in Gibbons. So at this point, I think we're into my rebuttal time, and I am going to let counsel do his argument and rebut. Thank you, counsel. Thank you. Mr. Kimberly. Thank you, Your Honor, and may it please the Court. So to begin, Your Honors, I don't think there's any dispute, at least certainly no room for fair-minded dispute, that if the public trial right attached to the hearing here, the Sixth Amendment was violated. And that follows from Pressley and Waller, which require the Court to find specific facts to justify the closure prior to the closure taking place. There's no question that didn't happen here. So I think the nub of the case is the question whether the closure here was covered by the Sixth Amendment at all. And of course, our position is that it was beyond fair-minded dispute. I think the starting point for this analysis, of course, is the last reasoned decision of the state court system, which is what 22, excuse me, 2254d1 instructs federal courts to review through that deferential lens. And there, the Court said just two things, and it said those two things in four sentences. I'll start with the last sentence. The last sentence, the Court said the conference had no impact, and this is JA 87. I'm sorry, tell me again. Again, I think it's mass, but tell me again what it is you're quoting from or referring to. What are you talking about? I'm reading the Appellate Division's decision upholding the conviction in this case. In this case, okay. Yes, so this is the last reasoned decision. And the Appellate Division says this. It says the conference had no impact upon the conduct of the trial other than having the Court repeat its previous instructions about trial publicity and minutes and exhibits that had been sealed were unsealed that same day. On its face, that is a harmless error analysis. The Court is saying this made no difference. It was a harmless error. Therefore, we don't reverse. Well, but I mean, the fact that it's harmless, the fact that in examining a question of triviality, you might say things that would also be pertinent to a harmless analysis doesn't mean that it's not pertinent to a triviality analysis. I mean, the more harmful it would be, the less it would pass the triviality analysis regardless of the fact that it also affects the harmlessness analysis. The same factors can be pertinent to two different inquiries. That doesn't mean that it isn't pertinent to triviality as opposed to harmlessness alone. Well, I think there are two things to say about triviality, Your Honor. The first is I think the right way to understand, certainly the way that we understand this Court's triviality cases is that there is a certain category of courtroom closures that are so limited and de minimis that they really don't constitute closures at all. And I'd point the Court to the cases that have been cited in the briefs, including... But wouldn't a locked door mean closure? Wouldn't a locked door that excludes people who want to get in, isn't that closure? Well, I think it depends on the circumstances. If the door were locked and there were people who were trying to get in who were prevented from doing it, I think that would be a different case from if the court door were locked and nobody actually tried to get in. You mean to say that if it's established that anybody, that if the court door were closed by accident, that nobody realized it was closed and somebody came and couldn't get in, that's end of inquiry, it can't be trivial? If somebody came, tried the door, found it was locked and went away, that's the end of inquiry? Your Honor, I think that might be a tougher case. And if you look at United States against Johnson and United States against Killingback, both cases discussed in the briefing, I think both of those cases resemble the hypothetical that you're describing, where a single individual is excluded. But that, of course, is not this case. Well, would it matter if there were 100 people who were accidentally locked out rather than one person? I think very likely. So far as this court's triviality cases are concerned, yes, I think, of course, it would. So if there were 100 persons for 30 seconds? Well, Your Honor, look, these are somewhat challenging questions, duration plays in, how many people are excluded plays in. But again, I think the court has to focus on what happened here. So, I mean, the point is, I mean, my point, in any event, is that it's very hard to pin down exactly what are the issues that go to whether something is too trivial or not too trivial. There are a lot of different things that can play into that. In light of the Supreme Court's cases in Waller and Presley, Your Honor, respectfully, I have to disagree, and I would point the court to page 47 of the Supreme Court's decision in Waller. It was the same material that my friend, Mr. Rivalesi, was reading. And there the court explains the sorts of characteristics of a pre-trial suppression hearing. Of course, what made it a challenge in Waller was it was pre-trial. Here we're three weeks into the evidence phase of the trial. And what the court said is that when you have, when the counsel argue their positions, the outcome determined turns on considerations of fact, where there are strong pressures at work, when there are substantial allegations of misconduct. These are the sorts of considerations that implicate the values underlying the Sixth Amendment and require the proceeding to be held open. And of course, we have all of that in the proceeding in this case. There were accusations of misconduct by the prosecutor against Ms. Jordan at JA24. There were allegations of misconduct by the prosecutor against defense counsel at JA25. There are allegations of misconduct by the judge against the defendant, with the defendant present at JA27 and JA34. How would you characterize the closed proceeding here? What would you call it in terms of a stage of a trial? You've got Presley and Waller, where it's pretty clear. It's jury selection and suppression hearings. But this, we're doing it by analogy, it seems. We're trying to extend those cases or your adversaries likening it to a sidebar and it doesn't quite, to me, is to fit either. So I think to answer this question, Your Honor, it's helpful to look at Presley. And Presley refers both to a stage of the trial and a phase of the trial. And both times it does that, it's referring to the jury selection phase or the jury selection stage. It's clear what the court had in mind was something broader than days divvied up into 15-minute chunks. What I would say is we were in the midst, three weeks in, to the evidence phase of the trial. Now, what the DA would like to do is tell you that the way to look at this is every day at a trial is divvied up into phases depending on what's happened. And he would acknowledge that if there is a witness on the stand and someone's taking evidence, that's got to be held open. But I think the logical extension of his reasoning is that all of the material and the interstices between taking of evidence is not the evidence stage of the trial. It can be held closed. But that isn't a practical way, I think, of reading the Supreme Court's cases. So I would say we're through. Can I just interrupt with something that I hope is true and I think is extraordinarily obvious and yet worth saying? And that is that what makes this difficult for your position is that it's habeas corpus. I mean, if we were sitting in Albany as the Court of Appeals, this argument might have a much greater impact than we're sitting here trying to figure out whether fair-minded jurists could disagree. But here I think that the relation of 2254d-1 to 2241, excuse me, oh, I see it's only orange, is critical. So 2241 is the statute that grants a federal court authority to issue a writ of habeas corpus. And it requires only that the petitioner be, quote, in custody in violation of the Constitution. 2254 is then a filtering function. And it requires two things. It requires total exhaustion, not an issue in this case. And it requires that the last reasoned decision of the state courts be objectively unreasonable. Our position is the 2254 lens applies only to those four sentences that appear in the appellate division's opinion. So the court looks at that last sentence, for example. I think it's very easy, notwithstanding this court's triviality cases, to write that opinion, that last sentence off as an impermissible, harmless error analysis. And I would note, Your Honor, so far as triviality is concerned, my friend on the other side is relying principally on Gibbons. Gibbons is a 2009 case that was manifestly abrogated by Pressley. So Gibbons says closure of the courtroom during jury voir dire is trivial. Pressley says the exact opposite. And indeed, it says it so plainly that the Supreme Court issued a summary decision in that case. So relying, I think it ought to tell the court. Well, I mean, it was abrogated with respect to whether jury selection can be viewed as trivial. It's not abrogated as to whether triviality matters. Your Honor, I think it's an open question whether triviality is still alive and well after Pressley. Open question for the reasons that Judge Sack was exploring isn't helpful to you. Well, no. But Your Honor, I think the point is my friend on the other side is saying that for you to win, am I not correct that for you to win, the state court's decision has to be clearly contrary to well-established law established by Supreme Court precedent? And if fair-minded jurists could disagree, then the state court's finding prevails. Isn't that right? You're right, Your Honor. So we know this was not a chambers conference or a sidebar. It commenced as a sidebar. The sidebar is where the prosecutor asked for the courtroom to be closed. The sidebar was terminated. It obviously also was not a chambers conference. And even if it had been, we had objected to the closure of the courtroom qua chambers conference, we'd be in the same position as we are now. So I think we come back to that final sentence, Your Honor. My point about Gibbons. I'm sorry, which final sentence? The final sentence of the appellate division's decision. This is JA 87. These four sentences are what we have to show are objectively unreasonable. Then beyond that, there's a question whether there was a violation of the Sixth Amendment. And our position is, one, it is, I think, not correct to read this as a triviality opinion. The court doesn't say trivial. Its last sentence is just a straightforward, harmless error analysis, which is foreclosed by Fulminante and Sullivan. This is a structural error if the Sixth Amendment applies. Can I ask, finish your sentence, I think you did. Thank you, Your Honor. I would just add my point about Gibbons is that my friend on the other side is referring to Gibbons as sort of the guiding light in how to sort out whether a closure is trivial. But it isn't, because the analysis that Gibbons gave found that a closure during jury voir dire was trivial. And we know that not to be the case any longer after Presley. So that leaves us then with Johnson and Killingbeck as the only post-Presley cases where this court has found trivialities. And they've involved exclusions of a single person, each one of them. Neither involved, in addition, any kind of objection. Here we have vociferous objections right at the outset of this hearing. Killingbeck involved not showing images of child pornography to the audience while the jury and the judge and those on this side of the bar could see it. I mean, those are situations where there really isn't a closure at all. And I think that's what the triviality doctrine stands for. The concept that there are some proceedings that don't actually count as closed, even though in a technical sense you might be able to call them that. That certainly can't be described of this case. If the presider will allow me, this is a general question. But my understanding is that the client was acquitted of the murder charge but convicted on the manslaughter charge. And something which I think was probably considered something of a semi-victory by the defense at the time. Now, my assumption then is that were we to affirm in the district court here, your position would be that the murder case, the question of murder would be double jeopardy to the trier. If you had another trial, which is what you're asking for, I gather, it would be a trial only as to manslaughter because to try her again on first degree murder would be double jeopardy. Do I have that right? I think that's right, Your Honor. And if I may, I think I can see where you're going with this. I'm gone where I'm going, but go ahead. I think it's a really important question because we know that the substance of this closed hearing had significant implications and reverberations throughout the remainder of the trial. And we know this from JA 83 to 84, which is the sentencing hearing. At the sentencing, which is months later, Your Honor, the judge goes through a lengthy monologue in which he describes the circumstances of the case, effectively says he disagrees with the jury's verdict. He thinks the jury got it wrong. And he says literally the very last thing  now before I impose sentence, I want to mention and want to go back to October 31st. No one talks about this. He then discusses the various instances in which Ms. Jordan's statements were made to the media, which is the subject of the closed hearing here. And he says, I don't know who did it. It wasn't these lawyers because if they did, they'd be in hot water. That's a reference back to the prosecutor's accusations that the defense team had something to do with this. This is literally the last thing that he says before he imposes a sentence of 18 years, which is three times longer than the national average for circumstances of manslaughter involving a parent ending the life of an autistic child. So there's no way to tell how all of the ways that this hearing affected the trial. That's Gonzales-Lopez. It is a speculative inquiry into an alternative universe, said Justice Scalia. But here is crystal clear evidence that even apart from the question of guilt, it had an impact. It was on the top of the judge's mind, the last thing he said before imposing an extraordinarily severe sentence. And in these circumstances, we submit the disgrace relief to the prosecutor. Does the release of the transcript that very afternoon have any impact on our consideration of this? I think certainly no. And that comes from the Supreme Court's 1946 decision in Oliver where the court says that mere recordation is not a cure to a Sixth Amendment violation. And that's cited in our briefs. So the fact that it was unsealed cannot, as a matter of established Supreme Court law, make any difference here. Some thoughts prompted by what you just said about the judge's comments at sentencing. The judge would have said exactly the same thing if the circumstances had been such that this conference arose, let's say, prior to the trial. When there was no trial, no jury selection going on, if counsel had requested a conference with the judge and exactly the same thing had happened and it had happened in circumstances from which the public had been excluded, the judge in all likelihood would have said exactly the same thing at sentencing. But what is crucial according to your argument, it seems to me, is that this isolated thing that happened, the conference discussing something that was not part of the evidence or part of the trial, happened during the trial rather than happening not during the trial proceedings. Does that have any bearing on the issue? I think it does make a difference, Your Honor, that it happens after the jury is empaneled and the evidence phase has begun. But I want to stress, this hearing could not have happened pre-trial. The substance of this hearing was my client's posting of a website in which she complained that she didn't think she was being allowed to tell her story. She had her version of events and many of the facts relevant to that story were not being allowed into evidence. There's no way that's... Supposing it happened after the trial? Supposing it happened after the trial, between the trial and the sentencing? I suppose it's a question whether after the verdict is entered, the Sixth Amendment detaches it all. I think at that point, it may be that the public trial right terminates. That isn't a question I've researched, so it's tough for me to say. I do think it's a critical observation, Your Honor, to note that really what was going on in this hearing was the prosecutor trying to prejudice the judge against the defense team, the defendant, for going public with criticisms of the judge's rulings. This hearing took place with the defendant present three days before she was to give testimony in her own defense, with the judge effectively telling her, I hope this ought to stop. Whatever is going on here, this needs to stop. As though to tell her, stop telling your story, three days before she's to testify in her own defense. We know, Your Honor, that the Sixth Amendment standard cannot be that the phase has something to do with the determination of guilt, because that's not true of jury voir dire, nor is that true of pretrial suppression hearings. And I'll make one final note before sitting down. I appreciate the court's patience. Smith v. Titus involved a pretrial announcement of a judge's decision on a question concerning the scope of testimony. There was no argument taken. It was merely the judge announcing his decision and setting parameters for the way that testimony would take place later. And it was before the jury was impaneled. Nothing like this case. Our submission, Your Honor, is that Judge Cave and her carefully reasoned opinion got it right and this court should affirm. Thank you. Thank you, counsel. Um, Mr. Rivalese, you have three minutes for rebuttal. First, to turn to the appellate division decision. The appellate division said specifically in its decision that the right to a public trial does not extend to such conferences. This is the thing that reasonable jurists can disagree about. And that is, in Smith v. Titus, what the reasonable jurists disagreed about. The state court in that case found that Presley did not extend to that kind of a conference. And in this case, this court found that it did not extend to that kind of a conference. Presley and Waller specifically talk about whether the public trial right extends to those situations. They give reasons why it extends to suppression hearings, why it extends to jury selection. So here, the state court thought that it did not extend. The Supreme Court has only spoken to the two things that Waller and Presley specifically mentioned. There's no reason that the state must find that reasonable jurists could not possibly dispute that in this case, it did not have a public trial right. So that's the appellate division's decision. Then, turning to the actual proceeding, the prosecutor said several times that he was not accusing anyone of anything, not asking the defendant not to do anything, but wanted to make sure that the attorneys were not violating what they had agreed were their obligations. And the attorneys said they weren't. And they said that they agreed that they could not violate those obligations, that they were not permitted to disseminate this information, and they had not done so. That's all that happened. The real result of the proceeding was a jury instruction that everybody agreed should be given. That was the result of the proceeding, and also the assurance by the attorneys that they weren't doing what they weren't supposed to do. But that was it. There was no admission of evidence. There was nothing about the defendant's guilt. There were none of the hallmarks of a suppression hearing over jury selection. And that's why it was reasonable for the state not to find that the public trial right applied here. We'll ask the court to reverse. Your adversary, in his argument just given now, said something to the effect that this was not a bench conference, or a roving room conference. So in what manners was it not one of those things? What were the differences? The differences were that it took place in the courtroom, so the physical presence, and the press was asked to leave the courtroom. So that... That's not a difference. That's the same. Oh, I thought there was a difference between that and a bench conference. Yeah, that's what I'm asking. The press was asked to leave the courtroom. But... Okay, but I mean the press wasn't there, is the point, in either case. I'm sorry, go ahead. I mean, if there is a bench conference, the press may theoretically be in the courtroom, but they can't hear what happens at the bench conference. Right, that's correct. So what were the differences, if whether it was or it wasn't matters? Well, it matters what it's like, not what it is. So in other words, it doesn't matter whether it takes place in the conference room, at the bench, or in the courtroom. It matters what the proceeding is. And the proceeding here was the kind of thing that did not have to be a public trial. It was not testimonial. It was not jury selection. It was not one of the things that the Supreme Court requires to be in public. So are you saying that for these, for our purposes, this was the equivalent, was equivalent to a bench conference? Well, that it was reasonable, or not unreasonable for the state court to find that. I'm not saying that this court would have to find that in its own case, but that it's reasonable that different jurists would disagree about that. As to whether it was equivalent to a bench conference? Yes, that that's reasonable, and it wasn't unreasonable for the state court to find that. That was not a direct, that was not a contravention of Supreme Court precedent for the state court to find that. Reasonable jurists could disagree and debate that, as the Eighth Circuit found. Is there law on the extent to which the right to a public trial is violated by if the judge invites counsel and the defendant into the robing room to talk about something during the course of a trial in a public courtroom, and the judge says, come into the robing room, and in the robing room, there is a discussion. Are there precedents on that?  No, over the defendant's objection. Over the defendant's objection that this should not take place in the robing room, but in the presence of the public. Well, there is a case that we cite in our brief green edge where it took place in the robing room without the defendant's presence. I thought the question that was asked is how about with the defendant? With the defendant's presence? I'm not sure, Your Honor. I don't know if there is. Okay, thank you. And we'll ask the court to reverse the district court. Thank you, counsel. We'll take the matter under advisement. The last case for today, Johnson L versus Chambers, is on submission. So that concludes today's arguments. I'll ask the courtroom deputies to adjourn. The court stands adjourned.